K.S. v A.S. (2025 NY Slip Op 50324(U))

[*1]

K.S. v A.S.

2025 NY Slip Op 50324(U)

Decided on March 14, 2025

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 14, 2025
Supreme Court, Westchester County

K.S., Plaintiff,

against
A.S., Defendant.

Index No. XXXXX

Plaintiff — Howard M. Lofkowitz, Esq., Lefkowitz Legal PLLC, 32 Flag Hill Road, Chappaqua, New York 10514
Defendant — Self-Represented

James L. Hyer, J.

The following documents were considered in connection with Plaintiff's Order to Show Cause filed on February 21, 2025, (hereinafter "Motion Sequence No. 1") seeking entry of an order granting the following relief:
1. Holding the Defendant, A.S. in contempt of Court pursuant to Domestic Relations Law § 245 and Sections 750 and 753 of the Judiciary Law, amongst other statutes, due to her failure to cooperate in the drafting of a Domestic Relations Order so as distribute a 401(k) plan in her name, her taking of the entire 401(k) plan in her name rather than allowing it to be distributed via Domestic Relations Order, and her failure to make various payments related to the Marital Residence, all in contravention of the August 2, 2024 Judgment of Divorce and June 20, 2024 Marital Settlement Agreement, which was incorporated by reference but not merged into the Judgment of Divorce;
2. Granting Plaintiff a money judgment as against the Defendant in the sum of no less than $83,132.77 related to the closed 401(k) plan ($79,173.15) as well as statutory interest thereon, as well as for the one half of the sums that Defendant was required to pay for the monthly mortgage and maintenance payments (one half equal $3,959.62) but failed to pay; all pursuant to DRL 244, DRL 244-a, and the June 20, 2024 Marital Settlement Agreement;
3.Compelling Defendant to immediately pay all sums found due to the Plaintiff;
4. Compelling the Defendant to comply with all terms of the August 2, 2024 Judgment of Divorce and June 20, 2024 Marital Settlement Agreement, including but not limited to those provisions relating to the sale of the Marital Residence;
5. Ordering that all proceeds from the sale of the Marital Residence be provided to the Plaintiff so as to partially offset the sums due to Plaintiff which were either (i) wrongfully withdrawn by Defendant from her 401(k) plan, or (ii) not paid by Defendant for the mortgage and/or maintenance-common charges of the Marital Residence, as were required to be paid by the Defendant, as stated in the June 20, 2024 Marital Settlement Agreement;
6. Granting attorney's fees to the Plaintiff related to the making of this motion; and
7. For such other and further relief as to this Court seems just and proper.
PAPERS               
NUMBERED
Order to Show Cause/Affirmation In Support/ Affidavit In Support/
Exhibits 1-22 1-25
RELEVANT FACTUAL AND PROCEDURAL HISTORY
This matrimonial action was commenced on January 10, 2024, with Plaintiff's filing of a Summons with Notice (NYSCEF Doc. No. 1). At the time of commencement, Plaintiff was represented by counsel being Howard M. Lefkowitz, Esq. (hereinafter "Plaintiff's Counsel").
On March 28, 2024, Defendant appeared with the filing of a Notice of Appearance (NYSCEF Doc. Nos. 3 & 4), wherein Christopher L. Esposito, Esq., appeared on behalf of Defendant (hereinafter "Defendant's Counsel").
On June 20, 2024, the parties entered into a Marital Settlement Agreement (NYSCEF Doc. No. 24) (hereinafter "Stipulation").
Article II of the Stipulation addressed the manner within which the parties would engage in equitable distribution of the parties' retirement accounts:
"9. Except as otherwise provided in this Agreement, the parties hereby relinquish any and all claims and rights which either may now have or hereafter acquire or possess to share in any capacity or to any extent in any pension, profit-sharing, stock option, IRA, 401(k), 403(b) or HR10 plan, or any other retirement or deferred compensation plan established for the other party that may exist now or in the future, including but not limited to, survivorship rights, except as otherwise provided in this Agreement. The parties hereby covenant and agree that they will execute any spousal waivers that may be requested by the other party or required under the Retirement Equity Act of 1984 or any similar federal or state statute that may be enacted. Nothing herein shall be deemed to waive either party's Social Security Rights. This paragraph is intended to substitute for any other statement, prepared for or document, which might be required by any plan, fund, trust, administrator, trustee or similar entity or person, so that each party may receive, said benefits as if the parties had never married.
10. 
Retirement Accounts:
A. The parties hereby covenant, represent and warrant that they have been informed by their respective counsel as to their rights pursuant to Domestic Relations Law §236(b), that Pension/Retirement plans, individual retirement accounts (IRA), Deferred Compensation and annually and variable supplement accounts and funds are deemed marital property subject to equitable distribution.
B. The Husband represents that his only retirement account is a 401(k) account at Chase [*2]bank which contains approximately $11,300 on the date of commencement of this action, and that no loans are outstanding with regard to this account. The parties agree that the Husband shall keep this retirement account in his name. The Wife hereby relinquishes and waives any right, title or interest in said property, which she may have now or might otherwise acquire in the future.
C. The Wife represents that the only retirement account that she possesses is a 401(k) account at Vanguard, which contains approximately $152,637.00.
D. The Husband shall be entitled to a distribution from the Wife's 401(K) equal to fifty percent (50%) of the marital portion of the account, which marital portion shall be measured from the date of the parties' marriage, to wit: December 17, 2008, up to and including the date of commencement of the instant action, to wit: January 10, 2024, subject to any gains and/or losses up to the date of transfer, less the sum of $5,650.00, which is equal to the marital portion of the Husband's retirement account due to the Wife, which is being retained by the Husband. Additionally, to the extent that there has been a loan take by the Wife from her retirement account, the account shall be divided amongst the parties as if the loan has already been repaid (without deducting the amount of the loan from the corpus).
E. The parties acknowledge and agree that a Domestic Relations Order ("DRO") may be required to properly effectuate the transfer of the parties' respective marital interests in the above stated retirement account. The Parties shall retain Lexington Pension Consultants to prepare the Domestic Relations Order and shall split the costs and expense for said preparation equally (50/50). The parties agree to cooperate in the preparation and execution of all documents required to prepare the necessary DRO. The parties further agree that each shall be 100% for his or her own counsel fees that he or she may incur in connection with the preparation, review, and submission of the necessary DRO. In the event a Domestic Relations Order is not required to effectuate the division and distribution of the above listed retirement asset(s) of the Wife, the parties agree to cooperate with the plan provider(s) to effectuate a direct rollover of the Husband's 50% marital interest into an account established by the Husband as soon as administratively feasible for the plan provider(s)."
Article IV of the Stipulation addressed the manner in which the parties would address equitable distribution of the former marital domicile known XXXX (hereinafter "Marital Residence"):
"1. The parties jointly own a condominium apartment located at XXXX (the "Marital Residence").
2. The marital residence is subject to a mortgage in the both parties' names through Wells Fargo Bank.
3. The parties have had the marital residence appraised by David Lister of Madison & Park Appraisal, and such appraisal valued the property at $285,000, and both parties accept such appraisal as the value of the property.
4. The parties represent and warrant to each other than, as of the date hereof, neither party has caused any lien or encumbrance to be placed on the marital residence except for the mortgage listed above.
5. The parties agree that the deed to the marital residence shall be transferred solely to the [*3]Wife's name on the date that she mortgages/refinances it in her own name and pays off the current mortgage on the residence, which shall occur on or before October 15, 2024. The Wife shall arrange and pay for the drafting of all transfer documents related to the transfer and pay any associated transfer taxes, and the Husband shall cooperate and sign all required, truthful documents related to the transfer which are presented to him.
6. Simultaneously with the transfer of the marital residence to the Wife, the Wife shall pay the Husband one half of the net equity in the property, which shall be calculated by dividing in half the $285,000 value of the property less the outstanding principal on the mortgage of the home.
7. Until the marital residence is transferred pursuant to this agreement, the Wife shall continue to make all payments for the mortgage and common charges; and the Wife shall be entitled to any escrow held by Wells Fargo related to the residence after the residence is transferred,
8. In the event the Wife fails to timely buy out the Husband, as is stated above, the Marital Residence shall be immediately placed on the market for sale under the following conditions:
* * *
9. It is further agreed that upon the sale of the Marital Residence to a third party, the proceeds of the sale shall be distributed as follows:
i. The amount necessary to fully satisfy the existing mortgage held by Wells Fargo;
ii. Usual and customary fees charged by purchaser's title insurance company.
iii. Closing attorney's fee, if the parties agree to utilize the same real estate attorney to close title;
iv. Real Estate Broker's fee.
10. The net sale proceeds, after the above deductions, shall be equally split between the parties, with each party being entitled 50% of the net sale proceeds."
Article XI of the Stipulation sets forth the process by which the parties would address alleged defaults of the other pertaining to the obligations of the parties set forth within the Stipulation:
"1. In the event that either party defaults with respect to any payment described in this Agreement, or with respect to any other obligation imposed upon him or her under this Agreement, and such default is not remedied within fifteen (15) days after the sending of a written notice via email and regular mail specifying such default, the defaulting party agrees to reimburse the other party for any and all reasonable expenses, costs and attorneys' fees, resulting from or made necessary by sending the notice and bringing on of any suit or other proceeding to secure such payment or enforce any such obligation, provided such suit or other proceeding results in a judgment, decree, award or order substantially in favor of the non-defaulting party.
2. In the event that either party shall institute a suit or other proceeding against the other to enforce any of the terms, covenants or conditions of this Agreement, and after the institution of such action or proceeding and before judgment is or can be entered the allegedly defaulting party substantially complies with such term or condition of the Agreement, the suit, motion or proceeding shall be deemed to have resulted in a judgment, award, decree or order substantially in favor of the complaining party."
Article XIII of the Stipulation addressed how the Stipulation could be modified, party waiver and a requirement of further assurances:
"3. Modifications. No provision of this Agreement shall be changed or modified, nor shall this Agreement be discharged or terminated in whole or in party, except by an instrument in writing signed by the party against whom the change, modification, discharge or termination is claimed or sought to be enforced in the same form as this Agreement.
* * *
6. 
No Waiver. The failure of either of the parties to insist, in any one or more instances, upon a strict performance of any of the covenants or provisions of this Agreement shall not be construed as a waiver or a relinquishment for the future of such covenant or provision, but the same shall continue and remain in full force and effect.
* * *
11. Implementation. Each of the parties hereto, without cost to each other, shall from time to time hereafter execute and deliver any and all further instruments and assurances, and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement."
Neither party has alleged to this Court that the Stipulation was modified pursuant to Article XIII or otherwise, or that either party engaged in a waiver of any obligations of the Stipulation.
On August 2, 2024, a Judgment of Divorce was entered (NYSCEF Doc. No. 38), (hereinafter "Judgment of Divorce"), which incorporated but did not merge the terms set forth within the Stipulation and included the following provisions:
"ORDERED AND ADJUDGED that all aspects of Equitable Distribution were agreed upon by the parties' in the written and executed June 20, 2024 Stipulation of Settlement,
ORDERED AND ADJUDGED that the June 20, 2024 Stipulation of Settlement, entered into between the parties, which is on file with this Court, shall be incorporated herein by reference, shall survive and not be merged in this Judgment, and the parties hereby are directed to comply with all legally enforceable terms and conditions of said Stipulation of Settlement as if such terms and conditions were set forth in their entirety herein; and it is further"
On August 5, 2024, a Notice of Entry of the Judgment of Divorce was filed (NYSCEF Doc. No. 40).
On February 3, 2025, Plaintiff's Counsel sent a letter to the Court (NYSCEF Doc. No. 41) requesting a Pre-Motion Conference regarding Defendant's alleged lack of cooperation pertaining to the Domestic Relations Order and payments related to the Marital Residence, after which an order (NYSCEF Doc. No. 42) was entered scheduling a Pre-Motion Conference for February 14, 2025, at 9:00 a.m., wherein all parties and counsel were directed to appear in person.
On February 12, 2025, Defendant's Counsel filed a letter to the Court requesting an [*4]adjournment (NYSCEF Doc. No. 43),[FN1]
 to which Plaintiff's Counsel objected (NYSCEF Doc. No. 44), after which an Order was entered denying the adjournment (NYSCEF Doc. No. 45). 
On February 14, 2025, a Conference was held before the undersigned wherein appearances were made by Plaintiff, Plaintiff's counsel and Defendant appeared as a self-represented litigant. A so-ordered Court Transcript from this Conference was filed (NYSCEF Doc. No. 50) (hereinafter "Transcript").
During the Conference, Defendant was advised of her right to be represented by retained counsel and provided with the following documents: (1) Court Exhibit #1 — Self-Represented Litigant Information Sheet (NYSCEF Doc. No. 49); and (2) Court Exhibit #2 — Part Rules of the Hon. James L. Hyer, J.S.C. (NYSCEF Doc. No. 48). Two Plaintiff's Exhibits where also marked for identification: (1) Plaintiff's Exhibit #1: Notice of Default, dated January 28, 2025; and (2) Plaintiff's Exhibit #2: Stipulation.[FN2]
 
The Court then presented Defendant a copy of the Stipulation, inquired of Defendant as to the execution of the Stipulation and the alleged withdrawal of funds from her 401(k):
"THE COURT: Did you sign that Stipulation of Settlement?
A.S.: I can't recall signing any of that.
THE COURT: You can't, not a problem. I am going to mark it as an exhibit. I am going to ask you to look at it.
A.S.: I don't —
THE COURT: Excuse me, one moment. I am going to ask you to look at it and identify if this is your signature or not because it appears to be signed by both parties. We're going to do that now.
A.S.: Okay.
THE COURT: We will mark this as Court Exhibit 3. (Whereupon, Court Exhibit 3 was marked in evidence.)
THE COURT: Ma'am, I am going to ask you to look at what has been presented to you as Court Exhibit 3. It appears to be initialed on each page. I am sorry, strike that. There appears to be initials on certain pages. I am going to ask you to go to at particular 15 page, page 35, because it appears to be signed by you but I would like you to take a look at that document.
A.S.: It is not signed.
THE COURT: Take a look at the entire document, page 35, 36. It appears to be fully executed in front of a notary public. This document was submitted to me with the request that I so order it by both your then attorney and the Plaintiff's attorney and I so ordered the document. So, just look at it very carefully. Advise the court  and remember you are [*5]under oath  I am going to ask you again, did you sign this document?
A.S.: Page 35 was signed by me.
* * *
THE COURT: Ma'am, you were required to transfer 50 percent as defined in this document your 401(k) to your husband. I am going to ask you, as we sit here now, do you have a 401(k) account at Vanguard?
A.S.: Yes, I did.
THE COURT: Do you have one now?
A.S.: No, I don't.
THE COURT: What happened to the account at Vanguard?
* * *
THE COURT: I am going to ask you a very simple question. Ma'am, did you withdraw the funds?
A.S.: Yes, I withdrew my funds to be able to pay my bills because he was not contributing towards anything."[FN3]
On February 21, 2025, Plaintiff filed Motion Sequence No. 1 by Order to Show Cause (NYSCEF Doc. Nos. 51-75[FN4]
) seeking the relief set forth above which was conformed on February 21, 2025, (NYSCEF Doc. No. 76) directing: (1) That Plaintiff serve Defendant with Motion Sequence No. 1 by February 25, 2025; (2) That answering papers and/or cross motions, if any, served on Plaintiff's counsel by March 7, 2025; (3) That any opposition submissions to any cross motion filed shall be served by overnight traceable delivery and email by March 14, 2025; (4) That no reply submissions shall be accepted; and (5) That the return date for Motion Sequence No. 1 be March 14, 2025, at 9:30 a.m., at which time no appearances would be required.
Defendant failed to file any submissions in opposition to Motion Sequence No. 1 or any cross motion seeking affirmative relief, nor were any other submissions made with respect to Motion Sequence No. 1.

 Parties' Contentions
Plaintiff asserts that Defendant has engaged in multiple violations of the Stipulation and Judgment of Divorce warranting the entry of an order holding Defendant in contempt and the granting of the other relief requested in Motion Sequence No. 1.
With respect to the Article II of the Stipulation, Plaintiff asserts that Defendant failed to comply with the preparation of a Domestic Relations Order pertaining to the Defendant's 401(k) account (hereinafter "401(k)") following the parties having engaged Lexington Pension Consultants (hereinafter "Lexington"), and ultimately removed all of the funds and closed the 401(k). Plaintiff's Counsel includes a detailed summary of a period, from September of 2024 through January of 2025, wherein he engaged in efforts to secure Defendant's compliance with [*6]this and other obligations pursuant to the Stipulation and Judgment of Divorce.[FN5]

During this period, Plaintiff's counsel recounts at least six communications sent by him to Defendant's Counsel which he reports were largely ignored.[FN6]
 Receiving no cooperation from Defendant's Counsel or Defendant, Plaintiff's Counsel then served three notices of default (hereinafter collectively "Notices of Default).[FN7]
 Lexington as well communicated with Defendant's Counsel during this period by, on at least four occasions, sending correspondence seeking cooperation in the preparation with the drafting to the Domestic Relations Order;[FN8]
 and by sending a final letter dated February 10, 2025 advising that the order could not be drafted due to the 401(k) account having been closed;[FN9]
 which was confirmed by a letter from Vanguard to Lexington, dated January 29, 2025.[FN10]

Plaintiff's counsel asserts that from the 401(k) Plaintiff is entitled to a money judgment against Defendant in the amount of $79,173.15, calculated by dividing the total balance of the 401(k) of $169,646.31 in half being $84,823.15 and further subtracting the Defendant's credit of $5,650.00 (arising from Plaintiff's retention of his entire retirement account). 
With respect to Article IV of the Stipulation, Plaintiff's counsel asserts that despite being obligated to do so, Defendant failed to pay the mortgage payments and maintenance charges on the Marital Residence. As to the mortgage payments, Plaintiff's counsel directs the Court to Exhibit 20 (NYSCEF Doc. No. 73), being a mortgage statement indicating that the last mortgage payment received was for $844.62 on December 5, 2024. As to the maintenance payments, Plaintiff's counsel directs the Court to Exhibit 21 (NYSCEF Doc. No. 74), being correspondence from Stillman Management Realty Corp, dated February 1, 2025, with an amount due of $3,556.48.
Plaintiff's counsel asserts that pertaining to mortgage and maintenance arrears Plaintiff is [*7]entitled to a money judgment against Defendant in the amount of $3,956.62, calculated by dividing the total mortgage and maintenance payments of $7,913.24 in half.
Finally, Plaintiff's counsel argues that Plaintiff is entitled to an award of counsel fees in the amount of $14,500.00, in addition to costs in the amount of $175.00[FN11]
. In support of this application, Plaintiff's Counsel directs the Court to his engagement agreement with Plaintiff (NYSCEF Doc. No. 22) and while not filing his billing statements, asserts, "Thus far, as a result of the Defendant's dilatory conduct, your affiant spent no less than 25 hours meeting with my client on two occasions, reviewing the Settlement Agreement, and Judgment of Divorce, writing letters/emails to the Defendant and her attorney, writing to the Court to request a pre-motion conference and then attending the conference, drafting the instant motion and related research-all to obtain the relief already agreed and ordered," and continues, "Your affirmant anticipates an additional four hour will be spent reviewing the Opposition papers and to prepare Reply papers and for at least one court appearance on the matter."[FN12]
 In support of this application, Plaintiff's Counsel provides summary of his professional credentials and directs the Court to applicable law pertaining to applications seeking an award of counsel fees and costs.

Legal Analysis
1. Failure to Address Plaintiff's Arguments
As Defendant has failed to address or controvert Plaintiff's factual allegations set forth in Motion Sequence No. 1, except to the extent that Defendant made admissions on the Court as reflected in the Transcript, those facts asserted by Plaintiff are deemed admitted (McNamee Const. Corp. v. City of New Rochelle, 29 AD3d 544 [2d Dept. 2006]).
2. Compliance With Article XI of the Stipulation
The Appellate Division Second Department has noted the manner within which a trial Court is to interpret a stipulation of settlement incorporated but not merged into a judgment of divorce:
"A stipulation of settlement that is incorporated but not merged into a judgment of divorce is a contract subject to principles of contract construction and interpretation" (Gluck v. Gluck, 205 AD3d 1006, 1007, 166 N.Y.S.3d 876 [internal quotation marks omitted]; see Kirk v. Kirk, 207 AD3d 708, 711, 174 N.Y.S.3d 381; Levi—Marchessault v. Marchessault, 162 AD3d 650, 651, 78 N.Y.S.3d 395). In interpreting a stipulation of settlement, "the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (Matter of Schiano v. Hirsch, 22 AD3d 502, 503, 803 N.Y.S.2d 643 [2005]; see Kirk v. Kirk, 207 AD3d at 711, 174 N.Y.S.3d 381; Shkreli v. Shkreli, 186 AD3d 638, 639, 129 N.Y.S.3d 177 [2020]). A court may not rewrite an agreement "by adding or excising terms under the guise of [*8]construction, and it may not construe the language in such a way as would distort the contract's apparent meaning" (Kirk v. Kirk, 207 AD3d at 711, 174 N.Y.S.3d 381 [internal quotation marks omitted]; see Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 NY3d 470, 475, 775 N.Y.S.2d 765, 807 N.E.2d 876; McPhillips v. McPhillips, 165 AD3d 917, 919, 85 N.Y.S.3d 541). " 'Moreover, a court cannot reform an agreement to conform to *943 what it thinks is proper, if the parties have not assented to such a reformation' " (Tamburello v. Tamburello, 113 AD3d 752, 753, 978 N.Y.S.2d 864, quoting Cohen—Davidson v. Davidson, 291 AD2d 474, 475, 740 N.Y.S.2d 68; see Cappello v. Cappello, 286 AD2d 360, 361, 729 N.Y.S.2d 175).
* * *
Further, to the extent that the Supreme Court determined that the stipulation **450 of settlement was affected by a mutual mistake, reformation was not appropriate. A motion is not the proper vehicle for challenging a separation agreement incorporated but not merged into a judgment of divorce. Rather, the plaintiff was required to commence a plenary action to reform the stipulation (see Spataro v. Spataro, 268 AD2d 467, 468, 702 N.Y.S.2d 342; Matter of Scalabrini v. Scalabrini, 242 AD2d 725, 726, 662 N.Y.S.2d 581; Lambert v. Lambert, 142 AD2d 557, 558, 530 N.Y.S.2d 223). In any event, reformation of the stipulation was unwarranted, as the parties' mistake regarding the category of benefits the defendant would receive did not "involve a fundamental assumption of the contract" (Perretta v. Perretta, 187 AD3d 1076, 1077, 130 N.Y.S.3d 727 [internal quotation marks omitted]; see Simkin v. Blank, 19 NY3d 46, 53, 945 N.Y.S.2d 222, 968 N.E.2d 459; Hackett v. Hackett, 115 AD3d 800, 803, 982 N.Y.S.2d 167)."
(Anderson v. Anderson, 221 AD3d 941 [2d Dept 2023]).
Here, the parties entered into the Stipulation, the terms of which were incorporated by reference but not merged into the Judgment of Divorce. The terms included in Article XI set forth the manner within which future defaults of the Stipulation would be addressed. This process requires the complaining party to serve upon the defaulting party a notice of default on the other by e-mail and regular mail, and following the passage of a fifteen-day cure period if the asserted default is not cured, the complaining party is entitled to from the defaulting party reasonable attorneys' fees and costs for actions taken to compel the defaulting party to comply.
As noted above, Plaintiff's Counsel served the Default Notices on Defendant, each which indicate the manner of service being by mail and e-mail, which were copied to Defendant's Counsel.
The Court further finds that to the extent that Article XI of the Stipulation sets forth a condition precedent to either party seeking Court intervention to address an alleged default of the other only following the services of a notice of default and failure to cure by the defaulting party, that such condition precedent has been met through Plaintiff's service of the Default Notices and Defendant having failed to refute hat such service was effectuated (U.S. Bank National Association v. Kissi, 197 N.Y.S.3d 534 [2d Dept 2023]).
3. Plaintiff's request for the entry of an order compelling Defendant to immediately pay all sums found due to the Plaintiff and granting Plaintiff a money judgment as against the Defendant in the sum of no less than $83,132.77 related to the closed 401(k) plan [*9]($79,173.15) as well as statutory interest thereon, as well as for the one half of the sums that Defendant was required to pay for the monthly mortgage and maintenance payments (one half equal $3,959.62) but failed to pay; all pursuant to DRL 244, DRL 244-a, and the June 20, 2024 Marital Settlement Agreement
Article II and Article IV of the Stipulation provide clear terms pertaining to the equitable distribution of the 401(k) and Marital Residence respectively. Despite Defendant's obligations with respect to these provisions she engaged in material defaults of both despite numerous attempts to secure her compliance made over a four-month period. These efforts included Plaintiff's counsel sending correspondence to Defendant's Counsel and serving Defendant with multiple Notices of Default copied to Defendant's Counsel, coupled with the separate efforts to secure compliance by Lexington which sent correspondence to Defendant's Counsel. Beyond mere disregard for these attempts to secure her compliance, it appears that Defendant intentionally disregarded her obligations and after having been served with the first Notice of Default, intentionally secreted the funds in the 401(k) to avoid Plaintiff's receipt of his equitable share.[FN13]
 Plaintiff's counsel thereby requests the entry of a money judgment against Defendant in favor of Plaintiff in the amount of $79,173.15.
Moreover, Defendant was required to continue to make all payments for the mortgage and maintenance charges pertaining to the Marital Residence until she could refinance or until the Marital Residence was sold but failed to do so. Plaintiff's counsel thereby requests the entry of a money judgment against Defendant in favor of Plaintiff in the amount of $3,959.62.
Based upon the submissions made to this Court and the foregoing, Plaintiff's application is granted to the extent that Plaintiff is awarded $83,132.77,[FN14]
 from Defendant and Defendant is hereby directed to provide such payment to Plaintiff by certified bank check by delivery to the office of Plaintiff's Counsel by March 21, 2025. To the extent that such payment is not made in full by that date, the request for the entry of an order granting the entry of a money judgment against Defendant in favor of Plaintiff in the amount of $83,132.77, less any sums paid, plus statutory interest is granted. In order to effectuate this determination, by March 28, 2025, Plaintiff's Counsel shall file, with notice of settlement and proof of service upon Defendant, a proposed Money Judgment.
4. Plaintiff's request for the entry of an order directing that all proceeds from the sale of the Marital Residence be provided to the Plaintiff so as to partially offset the sums due to Plaintiff which were either (i) wrongfully withdrawn by Defendant from her 401(k) plan, or (ii) not paid by Defendant for the mortgage and/or maintenance-common charges of the Marital Residence, as were required to be paid by the Defendant, as stated in the June 20, 2024 Marital Settlement Agreement
Based upon the submissions made to this Court and the foregoing, Plaintiff's application is granted to the extent that all distributions of proceeds from the sale of the Marital Residence due Defendant pursuant to the Stipulation and Judgment up to the amount of $83,132.77 shall be paid to Plaintiff. 
5. Plaintiff's request for the entry of an order compelling the Defendant to comply with all terms of the August 2, 2024 Judgment of Divorce and June 20, 2024 Marital Settlement Agreement, including but not limited to those provisions relating to the sale of the Marital Residence
Based upon the submissions made to this Court and the foregoing, Plaintiff's application is granted to the extent that Defendant is directed to comply with all of the terms of the Stipulation and Judgment.
6. Plaintiff's request for the entry of an order holding the Defendant, A.S. in contempt of Court pursuant to Domestic Relations Law §245 and Sections 750 and 753 of the Judiciary Law, amongst other statutes, due to her failure to cooperate in the drafting of a Domestic Relations Order so as distribute a 401(k) plan in her name, her taking of the entire 401(k) plan in her name rather than allowing it to be distributed via Domestic Relations Order, and her failure to make various payments related to the Marital Residence, all in contravention of the August 2, 2024 Judgment of Divorce and June 20, 2024 Marital Settlement Agreement, which was incorporated by reference but not merged into the Judgment of Divorce
[A] Application For Criminal Contempt
Whereas civil contempt, pursuant to Judiciary Law § 753, seeks "the vindication of a private right of a party to litigation and any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right," (McCormick v. Axelrod, 59 NY2d 574, 583 [1983]), pursuant to Judiciary Law § 750, criminal contempt "involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates." (Id. (internal citations omitted)). "Although the line between the two types of contempt may be difficult to draw in a given case, and the same act may be punishable as both a civil and a criminal contempt, the element which serves to elevate a contempt from civil to criminal is the level of willfulness with which the conduct is carried out" (Id. (internal citations omitted)).
Pursuant to Judiciary Law § 750(A)(3), a court can punish a person for criminal contempt for "willful disobedience of its lawful mandate." Pursuant to Judiciary Law §751(1), as punishment for criminal contempt, the court can impose a fine on the contemnor in an amount not exceeding one thousand dollars or imprisonment not exceeding thirty (30) days. However, "where the punishment for contempt is based on a violation of an order of protection issued under section 530.12 or 530.13 of the Criminal Procedure Law, imprisonment may be for a term not exceeding three months (See Judiciary Law §751(1)). 
The standard of proof for such a violation is beyond a reasonable doubt, as it is a criminal proceeding and charge (Matter of Figueroa-Rolon v. Torres, 121 AD3d 684 [2d Dept. 2014]). A hearing is required only if the opposition papers raise a factual dispute as to the elements of [*10]contempt or the existence of a defense (Wood v. Wood, 134 AD3d 1028, 1029 [2d Dept 2015]; El-Dehdan v. El-Dehdan, 114 AD3d 4 [2d Dept 2013]).
Here, no hearing is necessary as no opposition submissions were filed disputing the elements of contempt or the existence of a defense.
Based upon the submissions made to this Court and the foregoing, Plaintiff's application is granted to the extent that the Defendant is hereby held in criminal contempt of Court.
[B] Application for Civil Contempt
"A motion to punish a party for civil contempt is addressed to the sound discretion of the court, and the movant bears the burden of proving contempt by clear and convincing evidence" (Matter of Hughes v. Kameva, 96 AD3d 845, 846 [2d Dept 2012]; see Cassarino v. Cassarino, 149 AD3d 689, 690 [2d Dept 2017]).
The movant must establish that: (1) a lawful order of the court, clearly expressing an unequivocal mandate, was in effect; (2) the order was disobeyed and the party disobeying the order had knowledge of its terms; and (3) the movant was prejudiced by the offending conduct (see Judiciary Law § 753[A][3]; El-Dehdan v. El-Dehdan, 26 NY3d 19, 29 [2015]).
"Once the movant establishes a knowing failure to comply with a clear and unequivocal mandate, the burden shifts to the alleged contemnor to refute the movant's showing, or to offer evidence of a defense, such as an inability to comply with the order" (Toranzo v. Toranzo, 185 AD3d 621, 623 [2d Dept 2020]). The Appellate Division clarified that "[i]t is not necessary that the disobedience be deliberate or willful; rather, the mere act of disobedience, regardless of its motive, is sufficient if such disobedience defeats, impairs, impedes, or prejudices the rights or remedies of a party" (Cutroneo v. Cutroneo, 140 AD3d 1006 [2d Dept 2016] quoting Gomes v. Gomes, 106 AD3d 868 [2d Dept 2013]).
Here, the parties entered into a Stipulation that was incorporated but not merged into the Judgment of Divorce which constituted a lawful order of the court, clearly expressing an unequivocal mandate. The Judgement of Divorce was entered at a time when Defendant was represented by Defendant's Counsel, a notice of entry of the Judgement of Divorce was filed, and this order remains in effect. As noted herein, Defendant disobeyed the Judgment of Divorce despite having knowledge of its terms and after multiple attempts to secure her compliance with those terms. Defendant has failed to provide any evidence of a defense, such as an inability to comply with the order and has failed to even respond to this application despite being aware that it was filed. Plaintiff has been prejudiced by Defendant's offending conduct as he has been denied his equitable distribution due from the 401(k) which Defendant has acknowledged she secreted all funds and, has been compelled to provide payment of the mortgage and maintenance fees pertaining to the Marital Residence as Defendant has failed to do so.
Based upon the submissions made to this Court and the foregoing, Plaintiff's application is granted to the extent that the Defendant is hereby held in civil contempt of Court.
7. Granting attorney's fees to the Plaintiff related to the making of this motion
When seeking an award of attorneys' fees, parties are required to submit itemized billing statements as proof of the attorneys' fees incurred, both to demonstrate substantial compliance with 22 NYCRR 1400.2 and 1400.3 and to establish the "extent and value of [the] services" rendered (Yakobowitz v. Yakobowicz, 217 AD3d 733 [2d Dept 2023] [internal citations omitted]).
Here, Plaintiff seeks an award of counsel fees and costs from Defendant asserting that [*11]this post judgment litigation was necessitated by Defendant's conduct, and that such fees are warranted pursuant to the terms of the Stipulation and Judgment, as well as applicable law. The Court agrees with these assertions. However, while Plaintiff's application includes a retainer agreement, no billing statements were submitted preventing the Court from granting the relief requested at this time.
Based upon the submissions made to this Court and the foregoing, Plaintiff's application for the entry of an order granting Plaintiff an award of attorneys' fees and costs from Defendant is denied without prejudice.
8. Other Relief
To the extent that other relief has been requested and it has not been granted or otherwise addressed herein, it is hereby denied.
Accordingly, it is hereby
ORDERED that Plaintiff's application is granted to the extent that Plaintiff is awarded $83,132.77, from Defendant and Defendant is hereby directed to provide such payment to Plaintiff by certified bank check by delivery to the office of Plaintiff's Counsel by March 21, 2025. To the extent that such payment is not made in full by that date, the request for the entry of an order granting the entry of a money judgment against Defendant in favor of Plaintiff in the amount of $83,132.77, less any sums paid, plus statutory interest is granted. In order to effectuate this determination, by March 28, 2025, Plaintiff's Counsel shall file, with notice of settlement and proof of service upon Defendant, a proposed Money Judgment; and it is further
ORDERED that Plaintiff's application is granted to the extent that all distributions of proceeds from the sale of the Marital Residence due Defendant pursuant to the Stipulation and Judgment up to the amount of $83,132.77 shall be paid to Plaintiff; and it is further
ORDERED that Plaintiff's application is granted to the extent that Defendant is directed to comply with all of the terms of the Stipulation and Judgment; and it is further
ORDERED that the Plaintiff's application is granted to the extent that Defendant is hereby held in criminal contempt of Court; and it is further
ORDERED that the Plaintiff's application is granted to the extent that Defendant is hereby held in civil contempt of Court; and it is further
ORDERED that Plaintiff's application for the entry of an order granting Plaintiff an award of attorneys' fees and costs from Defendant is denied without prejudice; and it is further
ORDERED that by March 18, 2025, Plaintiff's counsel shall serve a copy of this Decision and Order with Notice of Entry on Defendant by NYSCEF filing and traceable overnight delivery and email, and by that date shall file proof of service with the Court; and it is further
ORDERED that any relief requested not expressly granted or otherwise addressed herein is denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: March 14, 2025
White Plains, New York
ENTER:
Hon. James L. Hyer, J.S.C.

Footnotes

Footnote 1: While Defendant's attorney represented Defendant in the underlying action, his engagement agreement (NYSCEF Doc. No. 14) does not specifically include post-judgment representation, and Defendant's Counsel did not file any Notice of Appearance or otherwise appear for Defendant after the Judgement of Divorce was entered other than through the filing of this letter. Therefore, the Court has determined Defendant to be a self-represented litigant in the post-judgment litigation. 

Footnote 2: Plaintiff's Exhibit 2 is also referenced in the Transcript as Court Exhibit 3. 

Footnote 3: Transcript, Pg. 14: 12-25, Pg. 15:1-22, Pg. 16: 6-16, Pg. 18: 3-8.

Footnote 4: Exhibits 6, 8 and 9 were refiled as NYSCEF Doc. Nos. 77-79 on February 21, 2025.

Footnote 5: NYSCEF Doc. No. 52 ¶ 17-28.

Footnote 6: Correspondence, dated September 24, 2024, Exhibit 5 (NYSCEF Doc. No. 58); Correspondence, dated October 11, 2024, Exhibit 6 (NYSCEF Doc. No. 59); Correspondence, dated October 14, 2024, Exhibit 7 (NYSCEF Doc. No. 60); Correspondence, dated November 27, 2024, Exhibit 11 (NYSCEF Doc. No. 64); Correspondence, dated December 3, 2024, Exhibit 13 (NYSCEF Doc. No. 66); Correspondence, dated December 13, 2024, Exhibit 14 (NYSCEF Doc. No. 67).

Footnote 7: First Notice of Default, dated October 22, 2024, Exhibit 9 (NYSCEF Doc. No. 62); Second Notice of Default, dated December 31, 2024, Exhibit 15 (NYSCEF Doc. No. 68); and Third Notice of Default, dated January 28, 2025, Exhibit 16 (NYSCEF Doc. No. 69).

Footnote 8: Correspondence, dated September 24, 2024, Exhibit 4 (NYSCEF Doc. No. 57); Correspondence, dated October 15, 2024, Exhibit 8 (NYSCEF Doc. No. 61); Correspondence, dated November 6, 2024, Exhibit 10 (NYSCEF Doc. No. 63); and Correspondence, dated December 3, 2024, Exhibit 12 (NYSCEF Doc. No. 65). 

Footnote 9: Exhibit 17 (NYSCEF Doc. No. 70). 

Footnote 10: Exhibit 18 (NYSCEF Doc. No. 71).

Footnote 11: Calculated to include $130.00 for transcript costs and $45.00 for filing fees.

Footnote 12: NYSCEF Doc. No. 52 ¶ 72-73.

Footnote 13: Affidavit of Plaintiff's Counsel, NYSCEF Doc. No. 52 ¶ 37 ("Finally, the Court should note that the removal of all funds by the Defendant from the 401(k) was completed one week after she received the first Notice of Default from your affiant and the emails/letters referred to in paragraphs 17 through 22 herein.")

Footnote 14: Calculated in the following manner $3,959.62 pertaining to maintenance and mortgage payments related to the Marital Residence plus $79,173.15 pertaining to the 401(k).